CJ-19-746
Truong



IN THE DISTRICT COURT FOR THE STATE OF OKLAHOMA IN DISTRICT COURT
OKLAHOMA COUNTY                OKLAHOMA COUNTY

|  |  |  |
|---|---|---|
| TAVNER SNELSON | ) | FEB - 8 2019 |
|  | PLAINTIFF ) |  |
|  | ) | RICK WARREN |
| v. | ) | COURT CLERK |
|  | ) | CASE NO. CJ-2019-746 |
| PAYCOM PAYROLL, LLC | ) | CJ-2019-746 |
|  | DEFENDANT ) | JURY TRIAL DEMANDED |
|  | ) | ATTORNEY'S LIEN CLAIMED |

## PETITION

COMES NOW, the Plaintiff, Tavner Snelson, for her petition against Paycom. In support
of this petition, the Plaintiff alleges and states as follows:

### JURISDICTION AND VENUE

1. Plaintiff is a citizen of the State of Oklahoma and a resident of Oklahoma County.

2. Defendant Paycom Payroll, LLC is an employer in Oklahoma County.

3. On information and belief, all acts complained of occurred in Oklahoma County in the
   State of Oklahoma.

4. Plaintiff filed her claim with the Equal Employment Opportunity Commission ("EEOC")
   on March 26, 2018, within 180 days of the ending of her employment. A right to sue letter
   was issued November 14, 2018. This matter is filed within 90 days of receipt of the right
   to sue letter. **Exhibit 1 – EEOC Packet (redacted)**

5. Jurisdiction is proper in Oklahoma County.

### STATEMENT OF FACTS

6. At all times relevant, Plaintiff was an employee of Defendant.

7. Defendant employs more than fifteen (15) employees and is subject to the provisions of
   the Americans with Disabilities, as amended, ("ADA").

1



EXHIBIT
1

8. Defendant employees more than fifty (50) employees and is subject to the provisions of the Family Medical Leave Act ("FMLA").

9. Defendant is an Oklahoma employer and is subject to the provisions Oklahoma Anti-Discrimination Act ("OADA").

10. Defendant's employees that participated in the following events are:

    a. Amber Rosejos-Rembert – Team Lead

    b. Audrey Barrow – Service Team Lead

    c. Hillary Yetter – Paycom Service Supervisor

    d. Amanda Huslig – Human Resources ("HR") Team Lead

    e. Tiffany Gamblin – Human Resources ("HR") Manager

    f. Amy Cook Fisher – Senior Executive Client Relations Representative

    g. Chad Richison – Chief Executive Officer ("CEO")

    h. Chad Raymond – Vice President of Human Resources

11. Plaintiff was employed by Defendant from November 2, 2015, until October 12, 2017. She was a Paycom Specialist when she separated from employment. At separation, Plaintiff's rate of pay was $26.71 per hour.

12. Plaintiff suffers with major depressive disorder, anxiety, and post-traumatic stress disorder.

13. Plaintiff's workload began to aggravate her mental health conditions. Specifically, she began experiencing panic attacks at work, which were characterized by hyperventilating, vomiting, and/or crying.

14. On more than one occasion, Plaintiff advised management and HR of the symptoms of her panic attacks so they would recognize the attacks and respond appropriately.

15. Plaintiff believed that a change of position within the company might alleviate her stress, thus improving her mental health.

16. In fall 2016, Plaintiff made her first formal request for accommodations by asking Supervisor Rosejos-Rembert for a transfer to another department. Her request was denied by Rosejos-Rembert.

17. In approximately October 2016, Plaintiff took several consecutive days off work after she had a negative reaction to a medication that had been prescribed for her mental health issues. The reaction was so severe that Defendant had to call Plaintiff's parents to pick her up from work.

18. Upon her return, Plaintiff was not advised by Defendant of any rights she had under the ADA or FMLA.

19. In December 2016 or January 2017, Plaintiff began seeing new caregivers for her mental health conditions.

20. Plaintiff was prescribed Xanax and was directed to take the medication three times per day – before, during, and after her work shifts. Despite the medication, Plaintiff's panic attacks continued, becoming more frequent as time went on.

21. Due to prior treatment by the Defendant, Plaintiff was hesitant to take time off from work for her mental health issues.

22. Plaintiff's panic attacks frequently required her to leave her desk. As a result, her call metrics were impacted. Fisher directed Plaintiff to have her panic attacks while she was away from her desk instead of at her desk.

23. In approximately January 2017, in an effort to alleviate her panic attacks, Plaintiff requested to transfer to another department as an accommodation for her condition. Her

request was denied. She was told that she was "too good" to be lost from the Paycom Specialist Department.

24. Instead, Defendant elected to remove several of Plaintiff's clients to decrease her workload.

25. Shortly thereafter, Defendant began assigning additional tasks and duties to Plaintiff, effectively nullifying the decrease created by removing clients.

26. Plaintiff believed that transferring to a different position within the company would be an appropriate and reasonable accommodation, which would reduce her stress and, in turn, improve her mental health. Therefore, she began applying for internal positions in other departments, even if the positions paid less.

27. Plaintiff applied to internal postings for an "HCM Product Setup Specialist" and a training position. She qualified for both positions, but she was not selected for either one.

28. Shortly before the separation, Plaintiff's team was entirely populated by new employees. Because she was the most senior and experienced employee on the team, Plaintiff was assigned additional training duties related to the new employees.

29. On multiple occasions, Fisher and others from HR told Plaintiff she was "too emotional" and "negative," and that "only happy people are transferred."

30. From August 14 to 18, 2017, Plaintiff took a leave of absence for mental health reasons. Plaintiff again was not advised of her rights related to FMLA or ADA accommodations.

31. On or around August 21, 2017, Plaintiff presented a letter to Barrow. In the letter, Plaintiff expressed her belief that the demands of her current position exacerbated her mental health issues, and she repeated her request for a transfer. **Exhibit 2 – August 21, 2017 Letter**

32. On or around August 23, 2017, Barrow, Yetter and Huslig met with Plaintiff to discuss her letter. Plaintiff was told that she would not be allowed to transfer departments.

33. For the first time, Plaintiff was advised that her best option might be to apply for FMLA or an ADA accommodation. Plaintiff immediately accepted the offer to apply.

34. The same day or the following day, Plaintiff visited HR, where she met with Gamblin and Huslig to discuss applying for FMLA and ADA accommodations. Plaintiff was again advised that a department transfer was not an option and that completing FMLA and ADA paperwork would be best option.

35. On or around August 24, 2017, Plaintiff was in the midst of a full-blown panic attack and crying as she was leaving for lunch. Plaintiff ran into Fisher in the hallway, who pulled Plaintiff into her office. Fisher said she was aware of Plaintiff's letter. She said that Plaintiff's letter was "vinegar," and advised Plaintiff that she would "catch more flies with honey than with vinegar," or words to that effect. Although Fisher stated she would follow up with Plaintiff within the next two days, she did not.

36. On or around August 29, 2017, Plaintiff submitted her FMLA and ADA applications to HR. **Exhibit 3 – FMLA & ADA Applications**

37. On or around August 31, 2017, Plaintiff was approved for intermittent FMLA.

38. On or around September 5, 2017, Plaintiff emailed a copy of her August 21 letter to Richison, along with an explanation of what had occurred since her meeting with HR. Richison was out of the office, so he contacted Raymond to assist.

39. The same day, Raymond, Gamblin, and Huslig to yet again discuss her concerns.

40. On September 11, 2017, Plaintiff met with Raymond and Fisher to discuss ideas she had for improving company processes.

41. On September 21, 2017, Plaintiff met with Fisher. Fisher told Plaintiff that: 1) she had presented her ideas poorly in the September 11 meeting; 2) she was unprofessional,

unpredictable, and emotional; 3) her unprofessional crying caused her to be excluded from meetings with upper management; 4) she needed to not be a negative person who complained to other employees; and 5) she needed to be a team player.

42. Fisher also explained that she used to "be a crier" but learned to control it in the workplace because "crying is not professional." Fisher asked Plaintiff what she must do to calm down, and Plaintiff stated that she takes Xanax.

43. Fisher also accused Plaintiff of scheduling "tea times" with another employee to complain about the job. Plaintiff did schedule regular meetings with the other employee, but the two worked to troubleshoot client issues; they did not complain about the job.

44. On October 11, 2017, Raymond and Gamblin met with Plaintiff. Plaintiff restated her request for a transfer. Plaintiff was advised that she was not allowed to transfer.

45. Raymond stated that "people who are happy at Paycom have a greater chance of moving departments." Additionally, Raymond told Plaintiff that she was "cynical," had a "bad attitude," and "talking to [her] was like talking to [his] 14-year-old daughter."

46. The following day, October 12, 2017, Plaintiff provided to Barrow her two-week notice to quit. Raymond and Yetter accepted Plaintiff's resignation effective October 12. **Exhibit 4 – Resignation letter**

47. Plaintiff asked Raymond if she was being discharged, and he said no.

48. Thereafter, Plaintiff was prohibited from collecting her personal belongings and escorted from the property. This treatment was consistent with Plaintiff's observations of Defendant's actions when other employees were discharged.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

49. Paragraphs 1-48 are incorporated herein.

50. Plaintiff has a disability covered under the ADA, in that her major depressive disorder, anxiety, and post-traumatic stress disorder limit a major life function – working.

51. Plaintiff was able to perform the essential functions of her job with or without reasonable accommodations.

52. Plaintiff requested accommodations in that she requested to be transferred to a different position both verbally and applying for internal vacant positions for which she qualified.

53. Plaintiff followed up her applications with verbal information about the reasons she was seeking to move to the desired positions, specifically as an accommodation in order to reduce the frequency and/or severity of the panic attacks she experienced in the Paycom Specialist Department.

54. Plaintiff was denied the opportunity to transfer to a less stressful position because only "happy people" were transferred.

55. Plaintiff was perceived by Defendant's employees as negative, unprofessional, and a troublemaker as a direct result of her mental health conditions.

56. Defendant did reduce Plaintiff's workload after one request for accommodation, but it soon negated the results of the reduction by assigning to Plaintiff additional job duties.

57. Defendant's actions constitute discrimination against Plaintiff with respect to the terms, conditions and/or privileges of employment under the ADA.

58. Defendant's conduct was undertaken with malice and reckless indifference to Plaintiff's rights.

59. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered, and continues to suffer, the type of mental anguish, embarrassment, anger, frustration, disappointment, regret, despair, and disruption of her peace of mind as a result of

Defendant's unlawful conduct which any reasonable person would have suffered under like circumstances, and other non-monetary losses.

60. Plaintiff has been injured in an amount in excess of $75,000.00 and is entitled to judgment against the Defendant for its wrongful conduct.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE OKLAHOMA ANTI-DISCRIMINATION ACT

61. Paragraphs 1-60 are incorporated herein.

62. The OADA prohibits discrimination based on disability.

63. Defendant's actions constitute discrimination against Plaintiff with respect to the terms, conditions, and/or privileges of employment.

64. Defendant's conduct was undertaken with malice and reckless indifference to Plaintiff's rights.

65. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered, and continues to suffer, the type of mental anguish, embarrassment, anger, frustration, disappointment, regret, despair, and disruption of her peace of mind as a result of Defendant's unlawful conduct which any reasonable person would have suffered under like circumstances, and other non-monetary losses.

66. Plaintiff has been injured in an amount in excess of $75,000.00 and is entitled to judgment against the Defendant for its wrongful conduct.

## THIRD CAUSE OF ACTION
## VIOLATION OF THE FAMILY MEDICAL LEAVE ACT

67. Paragraphs 1-66 are incorporated herein.

68. Defendant is an employer that is bound by the provisions of the FMLA.

8

69. Plaintiff qualified as an eligible employee under the FMLA once she had been employed for 12 months.

70. An employee is entitled to leave under the FMLA when she has a serious health condition that makes her unable to perform the functions of her position. Leave can be granted for continuous or intermittent periods of time.

71. Plaintiff has a serious health condition under the FMLA, in that her major depressive disorder, anxiety, and post-traumatic stress disorder are mental conditions that involve continuing treatment by a health care provider.

72. Defendant was aware of Plaintiff's medical condition because she made numerous verbal statements to management about how to identify her panic attacks.

73. Plaintiff identified to Defendant that her panic attacks and other mental health conditions impacted her ability to perform her work.

74. By and through these notices, Defendant knew or should have known that Plaintiff had experienced an FMLA-qualifying event.

75. As a result, Defendant was obligated to notify Plaintiff of her FMLA rights within five (5) business days of each FMLA-qualifying event.

76. The first time Defendant notified Plaintiff of her FMLA rights what when it denied her request to transfer positions in the August 23, 2017, meeting.

77. Plaintiff applied and received approval for intermittent leave under the FMLA based on her mental health conditions.

78. Because Defendant did not notify Plaintiff of her FMLA rights when it first became aware of her FMLA-qualifying conditions, Defendant interfered with Plaintiff's exercise of her rights under the FMLA.

79. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered, and continues to suffer, the type of mental anguish, embarrassment, anger, frustration, disappointment, regret, despair, and disruption of her peace of mind as a result of Defendant's unlawful conduct which any reasonable person would have suffered under like circumstances, and other non-monetary losses.

80. Plaintiff has been injured in an amount in excess of $75,000.00 and is entitled to judgment against the Defendant for its wrongful conduct.

## FOURTH CAUSE OF ACTION
## CONSTRUCTIVE DISCHARGE

81. Paragraphs 1-80 are incorporated herein.

82. Plaintiff was constructively discharged by Defendant.

83. The Defendant, but it's illegal discriminatory acts, fostered a workplace environment that was so hostile that any reasonable person in Plaintiff's position would have resigned.

84. Plaintiff took all reasonable steps to resolve her concerns with the Defendant prior to quitting.

85. Plaintiff notified the Defendant numerous times that she had a mental health condition that was being exacerbated by workplace stress.

86. Plaintiff made multiple attempts to move to a different position; each request was denied.

87. Not only were Plaintiff's requests denied, but she was humiliated by Fisher, Raymond, and others when they gave the reasons for denying the requests.

88. Defendant failed to notify and/or timely provide Plaintiff with the opportunity to exercise her rights under federal law.

89. When Plaintiff attempted to assert her rights, Defendants' responses were increasingly hostile.

10

90. Plaintiff realized that her efforts would be fruitless, and she was left with no alternative but to quit.

91. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered, and continues to suffer, the type of mental anguish, embarrassment, anger, frustration, disappointment, regret, despair, and disruption of her peace of mind as a result of Defendant's unlawful conduct which any reasonable person would have suffered under like circumstances, and other non-monetary losses.

92. Plaintiff has been injured in an amount in excess of $75,000.00 and is entitled to judgment against the Defendant for its wrongful conduct.

WHEREFORE, Plaintiff Tavner Snelson demands judgment in her favor and against the Defendant Paycom in an amount in excess of $75,000.00 for its wrongful, improper and illegal conduct. Plaintiff Tavner Snelson requests that she be awarded her lost wages, damages for lost benefits, damage to reputation, damages for emotional distress and mental suffering, and punitive damages. Plaintiff Tavner Snelson further requests that the Court award her the costs and attorney's fees associated with this suit and any and all other relief that the Court deems just and equitable.

Respectfully Submitted,

Rachel Bussett, OBA#19769
Bussett Legal Group
Mid-Town Plaza
414 N.W. 4th St., Suite 200
Oklahoma City, OK 73102
Telephone: (405) 605-8073
Fax: (405) 702-4984
Email: rachel@bussettlegal.com
*Counsel for Plaintiff*

**JURY TRIAL DEMANDED**
**ATTORNEY'S LIEN CLAIMED**

11

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**INTAKE QUESTIONNAIRE**

Please immediately complete this entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). REMEMBER, a charge of employment discrimination must be filed within the time limits imposed by law, within 180 days or in some places within 300 days of the alleged discrimination. When we receive this form, we will review it to determine EEOC coverage. Answer all questions completely, and attach additional pages if needed to complete your responses. If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "N/A." (PLEASE PRINT)

**1. Personal Information**

Last Name: Snelson                    First Name: Tanner                    MI:

Street or Mailing Address: [redacted]                    Apt or Unit #:

City: [redacted]         County: [redacted]         State:         Zip: [redacted]

Phone Numbers: Home: ( [redacted]

Cell: ( )         Work: ( )

Cell: ( )         Email Address: [redacted]

Date of Birth: [redacted]         Sex: ☐ Male ☒ Female         Do You Have a Disability? ☒ Yes ☐ No

Please answer each of the next three questions. i. Are you Hispanic or Latino? ☐ Yes ☒ No

ii. What is your Race? Please choose all that apply. ☐ American Indian or Alaskan Native   ☐ Asian   ☒ White
☐ Black or African American   ☐ Native Hawaiian or Other Pacific Islander

iii. What is your National Origin (country of origin or ancestry)? _____

Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:

Name: [redacted]                    Relationship: [redacted]

Address: [redacted]         City: [redacted]         State:         Zip Code: [redacted]

Home Phone: ( ) [redacted]         Other Phone: ( )

**2. I believe that I was discriminated against by the following organization(s):** (Check those that apply)

☒ Employer   ☐ Union   ☐ Employment Agency   ☐ Other (Please Specify) _____

Organization Contact Information (If the organization is an employer, provide the address where you actually worked. If you work from home, check here ☐ and provide the address of the office to which you reported.) If more than one employer is involved, attach additional sheets.

Organization Name: Paycom

Address: 7501 W Memorial Rd,         County:

City: Oklahoma City    State: OK   Zip: 73142    Phone: ( ) 800-580-4505

Type of Business: payroll         Job Location if different from Org. Address:

Human Resources Director or Owner Name: Chad Richison & Chad Raymond         Phone: (800) 580-4505

Number of Employees in the Organization at All Locations: Please Check (✓) One
☐ Fewer Than 15   ☐ 15 – 100   ☐ 101 – 200   ☐ 201 – 500   ☒ More than 500

**3. Your Employment Data** (Complete as many items as you are able.) Are you a federal employee? ☐ Yes ☒ No

Date Hired: 11/02/2015         Job Title At Hire: Paycom Specialist

Pay Rate When Hired: 14.91         Last or Current Pay Rate: 26.71

Job Title at Time of Alleged Discrimination: Paycom Specialist         Date Quit/Discharged: 10/12/2017

Name and Title of Immediate Supervisor: Audrey Barrow Paycom Team Leader

If Job Applicant, Date You Applied for Job _____ Job Title Applied For _____

EXHIBIT 1

1

**4. What is the reason (basis) for your claim of employment discrimination?**

*FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.*

☐ Race ☑ Sex ☐ Age ☑ Disability ☐ National Origin ☐ Religion ☑ Retaliation ☐ Pregnancy ☐ Color (typically a difference in skin shade within the same race) ☐ Genetic Information; circle which type(s) of genetic information is involved: i. genetic testing   ii. family medical history   iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify:

If you checked genetic information, how did the employer obtain the genetic information?

Other reason (basis) for discrimination (Explain):

**5. What happened to you that you believe was discriminatory?** Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you. Please attach additional pages if needed. *(Example: 10/02/06 – Discharged by Mr. John Soto, Production Supervisor)*

A. Date: 10/1/2017   Action:
   Denied a department transfer to a different position

Name and Title of Person(s) Responsible:  Chad Raymond

B. Date:   Action:

Name and Title of Person(s) Responsible

**6. Why do you believe these actions were discriminatory?** Please attach additional pages if needed.

Please see attached.

**7. What reason(s) were given to you for the acts you consider discriminatory?  By whom?  His or Her Job Title?**

Chad Raymond from HR stated happy people at Paycom are able to transfer, since I was unhappy & depressed I would

I would not be an employee who would be allowed to transfer.

**8. Describe who was in the same or similar situation as you and how they were treated.** For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance? Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination. For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on. Use additional sheets if needed.

Of the persons in the same or similar situation as you, who was treated *better* than you?

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|---|---|---|---|
| A. | | | |
| B. | | | |

2

Of the persons in the same or similar situation as you, who was treated *worse* than you?

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|---|---|---|---|
| A. | | | |
| B. | | | |

Of the persons in the same or similar situation as you, who was treated the *same* as you?

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|---|---|---|---|
| A. | | | |
| B. | | | |

Answer questions 9-12 **only** if you are claiming discrimination based on disability. If not, skip to question 13. Please tell us if you have more than one disability. Please add additional pages if needed.

9. Please check all that apply:
   - ☒ Yes, I have a disability
   - ☐ I do not have a disability now but I did have one
   - ☐ No disability but the organization treats me as if I am disabled

10. What is the disability that you believe is the reason for the adverse action taken against you? Does this disability prevent or limit you from doing anything? (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.). I have major depressive disorder, panic attacks, PTSD, and generalized anxiety disorder

11. Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?
   ☒ Yes ☐ No
If "Yes," what medication, medical equipment or other assistance do you use?
Xanax, trazadone, and marigtel

12. Did you ask your employer for any changes or assistance to do your job because of your disability?
   ☒ Yes ☐ No

If "Yes," when did you ask? 08/21/2017 _____ How did you ask (verbally or in writing)? both
Who did you ask? (Provide full name and job title of person)
see attached

Describe the changes or assistance that you asked for: _____
see attached

How did your employer respond to your request? _____
see attached

3

13. Are there any witnesses to the alleged discriminatory incidents? If yes, please identify them below and tell us what they will say. (Please attach additional pages if needed to complete your response)

| Full Name | Job Title | Address & Phone Number | What do you believe this person will tell us? |
|---|---|---|---|
| A. see attached | | | |
| B. | | | |

14. Have you filed a charge previously on this matter with the EEOC or another agency?  ☐ Yes ☒ No

15. If you filed a complaint with another agency, provide the name of agency and the date of filing:

16. Have you sought help about this situation from a union, an attorney, or any other source?  ☐ Yes ☐ No
Provide name of organization, name of person you spoke with and date of contact. Results, if any?
Rachel L. Bussett, Bussett Legal Group PLLC 432 NW 11th St. OKC OK 73013, 405-605-8073
405-212-9112 fax, rachel@bussettlegal.com

Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire. If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws. If you do not file a charge of discrimination within the time limits, you will lose your rights. If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1. If you want to file a charge, you should check Box 2.

**BOX 1** ☐ I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time.

**BOX 2** ☒ I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name. I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

*Tanner Shulson*
Signature

3/23/18
Today's Date

PRIVACY ACT STATEMENT: This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:
1) FORM NUMBER/TITLE/DATE. EEOC Intake Questionnaire (9/20/08). 2) AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626. 42 U.S.C. 12117(a)
3) PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge. 4) ROUTINE USES. EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters.
5) WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. Providing this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information.

November 2009

4

6. Why do you believe these actions were discriminatory?

Other employees have been allowed to transfer. Mental health history is kept very secretive. However, I was told I could not move because I was not "happy" and only employees who were "happy" were allowed to transfer. My issue was not one of being happy or unhappy, I have diagnosied medical conditions which my bosses were aware or and refused to accommodate. Further, my bosses placed me in situations which made my medical condition worse. If I was unhappy in my current position it was because of how I was being treated by my bosses and management. I spoke out about the hostile environment that I work in and how it impacted my mental health disorders. I believe the "happiness" issues would have been addressed had I been allowed to transfer.

I took leave twice during my employment for mental health reasons. The environment got worse after each leave. Further, the company employees who were supposed to help me with my leave were not helpful or accommodating. I have attached a timeline with information relating to my treatment during my employment.

12. Who did you Ask?

I asked for accommodations on or about August 21, 2017. I asked Audrey Barrow, my Team Leader; Hillary Yetter, my Supervisor, and Chad Raymond with Human Resources.

I requested to move or have other accommodations on multiple other occasions in writing. The company constantly claimed that I had a negative attitude and refused to acknowledge my diagnosed mental health conditions and to allow me accommodations for the performance of my work. Instead of allowing me accommodations or working to improve the work environment I was labeled a trouble maker and a negative employee. I was placed in situations that made my anxiety worse in an effort to force me to quit which is ultimately what happened.

Describe the changes or assistance that you asked for:

I specifically requested a transfer to a position that would alleviate the stressors associated with my position and would put me in a situation that allowed me to do my work in a satisfactory method without it triggering my mental health conditions. This would have allowed me to work under supervisors who were not discriminatory as well. I also needed a time out or a break from time to time. We were often made to work though lunch and not allowed or encouraged to take time off.

How did your employer respond to your request:

Each request for accommodation was denied. I was told to be less negative and to learn to control my emotions.



Log Out

**HCM Product Setup Specialist**

Manage Applications

Return to Job Opportunities   Apply For Job

**Job Details**

**Level**

Entry

**Job Location**

Oklahoma City - Oklahoma City, OK

**Position Type**

Full Time

**Education Level**

High School

**Travel Percentage**

None

**Job Category**

General Business

**Description**

Paycom is looking to add an additional product setup professional to their team. This is a Project Management type role in that you will have over site and direction of various implementation projects.

Paycom is a cutting edge technology company with a track record of success. This position is critical to ensure all of our new products are cost effective while meeting the client needs. You will be a key player in our ongoing success!

**Skills/Abilities**

- Ability to understand and articulate the strategic value of integrated processes with a strong business acumen
- Strong writing skills including the ability to synthesize information into clear, concise message both for detailed analytical reports and executive summaries
- Effective verbal communication including the ability to relate well with others and ability to adapt style as needed

- Ability to work independently, work with a remote team, think creatively, manage own time and take initiative to drive projects
- Good typing, telephone, and computer skills
- Well organized with strict attention to detail
- Customer friendly attitude

## Qualifications

**Requirements:**

- High School Diploma
- Intermediate Excel skills

**Assets:**

- Bachelor's degree preferred

*Paycom provides equal employment opportunities (EEO) to all employees and applicants for employment without regard to race, color, religion, sex, national origin, pregnancy, military and veteran status, age, physical and mental disability, genetic characteristics, or any other considerations made unlawful by applicable state or local laws. This policy applies to all terms and conditions of employment, including recruiting, hiring, placement, promotion, termination, layoff, recall, transfer, leaves of absence, compensation and training. Paycom expressly prohibits any form of workplace harassment based on race, color, religion, sex, national origin, pregnancy, military and veteran status, age, physical and mental disability, or genetic characteristics.*

**Return to Job Opportunities** | Apply For Job |



**Welcome,**
tavner.snelson@gmail.com
| Manage Applications |
**Paycom Tour**

Paycom Service Department (PSD)
Team Leader (TL)

**Involved Parties**

- Amber Rosejos-Rembert
    - My PSD TL from 2016 – 2017
    - Promoted to PSD Supervisor in January 2017
- Audrey Barrow
    - Was a member of m team since November 2015 and was promoted to my PSD TL when Amber was promoted to PSD Supervisor.
    - PSD TL from 2017 to the end of my employment with Paycom.
- Hillary Yetter
    - PSD Supervisor over Audrey Barrow's team and others.
    - My direct PSD Supervisor
- Amy Cook Fisher
    - Previous Manager of PSD
- Amanda (cannot remember last name)
    - HR
    - Was included in the meeting on 8/23/17 and was involved in a few meetings with Tiffany Gamblin and Chad Raymond
- Tiffany Gamblin
    - HR Manager
- Chad Raymond
    - Head of HR
- Chad Richison
    - CEO
- Amelia Bennett (DiPasquale)
    - Paycom Specialist
- Brent Beachler
    - Previous Paycom Specialist
    - Paycom TL
    - Mentioned during the timeline. Brent was hired after I was and we were on the same team until he was promoted to a TL earlier in 2017. On more than one occasion he was approached by Amy Cook Fisher and Amber Rosejos-Rembert urging him to be careful with any conversations he had with me and to not get involved.
- Erika Tucker
    - Paycom TL

Paycom Service Department (PSD)
Team Leader (TL)

### Leave of Absences due to Mental Health

For both leave of absences, I was not informed that FMLA was an option until after I returned from my absence. My TLs at the time, Amber (2016 absence) and Audrey (2017 absence) were not aware of FMLA policies and were not aware they needed to present that as an option. After the fact, HR reached out to me to let me know we could proceed with FMLA if I felt as though I needed additional time off.

- Fall 2016, approximately October 2016
- 8/14/17 – 8/18/17

Paycom Service Department (PSD)
Team Leader (TL)

## Timeline of Events

- Fall 2016: first formal request to Amber Rosejos-Rembert, TL, to move departments. Was instructed I would stay in my current role, would demote to a Team Support Specialist (TSS), or would leave Paycom. Did not formally pursue another request after this conversation. Demoting to a TSS was not a feasible option financially and would require that I stay in PSD.
- 8/21/17: presented letter to Audrey Barrow, TL. She stated she would need to provide the letter to Hillary Yetter, Supervisor, and would follow up with me.
- 8/23/17: Audrey Barrow, Hillary Yetter, and Amanda (HR) had a meeting with me. This meeting is the only recorded meeting I have with Paycom during this process. In this meeting my letter was addressed, and I was told I would not be able to move departments. I addressed Amanda (HR) and stated I would like to proceed with an ADA Accommodation Request. She instructed me that she would have Tiffany Gamblin (HR Manager) reach out to me to begin the process and take the next steps.
- Appx 8/23/17: not certain of the date, but there are Paycom emails that will determine if this was 8/23/17 or the next day. I went down to HR and talked to Tiffany and Amanda some more about the meeting. They essentially said the same thing that department transfers weren't options, but my best option was to proceed with the FMLA and ADA options.
- 8/24/17: I ran into Amy Cook Fisher in the hallway when I was trying to leave for I lunch. I was crying hysterically and was having a full-blown panic attack. She pulled me into her office and encouraged me to catch my breath before I told her what was wrong. It took me a while to calm down between the panic attack and hyperventilating. After I could catch my breath I explained to her everything that was going on. She said she was aware of the letter I gave to my supervisor and stated that common phrase that you catch more files with honey than vinegar. She stated my letter was vinegar and was known by upper management in PSD as well as HR. By the end of the conversation I was very encouraged by upper management and believed they would assist me with moving to a different department. She stated she would discuss with HR, Audrey, and Hillary and either follow up with me the next day (8/25) or on Monday (8/28). I did not receive a follow up from Amy after this conversation.
- 8/29/17: I submitted my FMLA and ADA paperwork to HR.
- 8/31/17: I was approved for Intermittent FMLA.
- 9/5/17: I emailed Chad Richison at 2:07pm regarding the whole process. I essentially copied/pasted my original letter as well as explained what occurred since then. I ended the email with a reference to a meeting he led on 9/1/17 where he explained the vision of Paycom, his gratitude for our employment, and had a question/answer session. "Last Friday you asked us if we had any questions for you and I do. is there a way to collaborate with management or is this truly my only option?" He emailed me back at 3:09pm and stated "I am sorry to hear that the job is contributing added stress and greatly appreciate your willingness to provide feedback to that end. I also appreciate the time you have put in to the job and Paycom. I am working offsite today, so I am copying Chad Raymond in hopes that he is aware of your request and the response you have been given. He or someone else will reach out to you today to ensure that you are being treated fairly. Irregardless your final decisions, I wish you the best." Shortly after this email, Chad Raymond in HR called me down to a meeting. Tiffany Gamblin and Amanda (HR) were in the meeting. They were both taking notes while Chad and I spoke. In this meeting I

Paycom Service Department (PSD)
Team Leader (TL)

explained to HR that when I have panic attacks (which I was having) I cry as a result. I also can hyperventilate and throw up. *I like to give this information to people so they are aware of why I am crying and they are a little more understanding during the conversation.*

- Between 9/5 and 9/11: I was provided a copy of the meeting notes from 9/5. HR requested that I provide more examples of the claims I made regarding the department and my TL.
- 9/11/17: had a meeting with Chad Raymond and Amy Cook Fisher. In this meeting Amy apologized for not following up. She stated she dropped the ball and forgot. During this meeting I presented all my meeting notes. At the end of the meeting I was told I had great feedback and I brought everything to their attention in the way they requested from me. I explained the problem and the feedback and/or solution I had. I was told this was good feedback and would be presented to upper management in PSD to discuss further.
- 9/21/17: Amy had a follow up meeting with her in her office. HR was not present for this meeting. In this meeting, I explained I was having a panic attack and that is why I was crying and hyperventilating at times. During this meeting, no notes were taken. During this meeting I believe Amy attempted to level set with me and speak to me as a mentor and/or peer and not the head of my department.
    - Amy told me that I am inconsistent with any feedback I have provided. She stated that I deliver the feedback poorly and I am not professional.
    - She stated that I jump back and forth between what matters to me.
    - She stated that I need to not be a negative person who complains to other employees at Paycom (specifically Brent Beachler)
    - She stated that I wasn't a team player and that being a team means being a team even when it does not benefit you. (this is something I had stated in a previous meeting about Audrey and Hillary. I stated that we are always a team through the good and bad)
    - She stated as an employer they have rights to tell us to do things we do not want to do and as employees we must do these things.
    - She stated that she used to be a crier like me and learned to control it in the workplace because crying is not professional. At this point, I reiterated that I am not a crier. When I have panic attacks (as I was having) I cannot control that I cry.
    - She asked me what I must do to get myself to calm down, so I do not have episodes at work. I stated to her that I have medication (Xanax) that I was prescribed once this ordeal started with Paycom.
    - In this meeting she stated that she wants to take me to meetings with upper management because I have great feedback, but I am unpredictable and emotional. She stated that I was unprofessional in the workplace and wouldn't be able to attend these types of meetings.
    - She also lied about a regular activity that occurred between myself and Amellia Bennett (DiPasquale during most of her employment. She got married 6/18/17) She stated that Amellia and I would schedule "Tea Times" throughout our employment from 2015-2017. She said that were would schedule the time on our calendar and go into conference rooms and only complain about how awful Paycom is. She mentioned that Amellia was pulled aside by Kyle Bruce (Manager of PSD) and Ginny (Amellia and I do not know who this is. The only person we can think of is Ginny Rutledge, but she would not have been involved in a conversation like that with Amellia). I told her that never occurred with

Paycom Service Department (PSD)
Team Leader (TL)

Amellia. We did schedule time on our calendars (referred to as "10-minute sits") where we would either go to the other one's desk or over the phone. During these meetings we would trouble shoot and resolve any outstanding client issues. Both of our TLs (Audrey Barrow and Erika Tucker) were aware of these and did not have an issue with them. The only times we would go into conference rooms would be impromptu moments where one of us was having a panic attack. During those times, we would go into the conference room, so we would not be crying in the hallway or bathrooms. After I explained this to her she still said I was lying about it.

- By the end of this meeting, I had completely shut down and lost all hope in the process. I decided to fly under the radar and stick it out until I would submit my two-week notice. My last day would have been 10/27/17.

- 10/11/17: this was my final meeting with HR. Chad Raymond and Tiffany Gamblin were in this meeting. I wanted to discuss whether I had the ability to move to a different department. During this meeting I was told that from a HR standpoint and PSD standpoint I was not allowed to move to a new department.

    - Chad Raymond stated that people who are happy at Paycom have a higher chance of moving departments
    - He also stated that I am a cynical person and talking to me is like talking to his 14-year-old daughter
    - He stated that my bad attitude prevents me from moving into any other positions within the PSD department. For example, the BP consultant role. This was a new role that was created within PSD and specialist were moved to this role. I used this as an example of specialists being allowed to move out of their role.

- 10/12/17: I submitted my two weeks notice to Audrey Barrow that morning. She stated that we would wait until 4:45 that afternoon to announce it to our team so it would not cause anyone to lose motivation throughout the day. Around 4:15, I was called into Hillary Yetter's office and Chad Raymond was in there as well. I was told that they have accepted my resignation and would have me leave that day. They said out of courtesy to me that they would pay me out until 10/27. When asked if I was fired, Chad Raymond stated I was not fired from Paycom. When I asked Chad Raymond if I could have a copy of the meeting notes (I emailed Tiffany Gamblin about this previously and had not received a response) he let me know that Tiffany told him I had asked, and he stated those notes were Paycom property and I was not allowed to have a copy of the notes. I was asked what pertinent items I needed Audrey to bring to me and was then escorted from the premises. He stated that my remaining belongings would be sent to me in the next few days.

    - Based off my two years of experience with peers quitting and being fired I can speak to this process. When employees are fired from Paycom they are not allowed to go back to their desk. Their TL will grab their phone, keys, purse etc. and everything else will be boxed up and mailed. When employees quit they generally work out their remaining two weeks and can pack up their stuff on their own.

Paycom Service Department (PSD)
Team Leader (TL)

### Miscellaneous Information

- On multiple occasions by Amy Cook Fisher and HR I was told I was too emotional and negative
- It was made clear by HR that department transfers are exceptions made to people who are positive in general and happy with Paycom
- Chad Raymond stated that Chad Richison is 100% against department transfers
- Two TLs told me that during this process, Chad Richison held a meeting with PSD TLs and Supervisors and stated that if an employee is good for Paycom, but wants to quit because they can't leave PSD then to give them the opportunity to transfer. *This is something that was stated to me by Brent Beachler and Erika Tucker (current PSD TLs). I was not included in this meeting.*
- I was told by my peers who were aware of what was going on that I was standing up in a way that nobody else has. Generally, people quit instead of providing the feedback. The feedback I submitted to PSD and HR was very raw and was not pretty. It shed light on how the department functions and what needs to change.

October 12, 2017
Paycom
7501 W Memorial Road
Oklahoma City, OK, 73142


To Whom It May Concern:


It is with reluctance that I submit this letter. Although my time with Paycom has been, on the whole, satisfying and productive, for quite a while now I have become less and less satisfied with the work situation. The direction of the department in which I work, and the new targets and the methods of accomplishing them have made it increasingly difficult to feel I'm contributing enough. I am unable to continue my employment with Paycom after the denial of my transfer to a new position within PSD or a new department.

Therefore, it is with regret that I ask you to accept this letter of resignation from Paycom effective October 27, 2017.


Thank you,


Tavner Sneison



  

## Tavner Snelson
Mon 9/25/2017 6:20 PM
Sent Items

To: Amy Cook;

Hello Amy,

After further consideration on my side, I have determined it is in my best interest to refrain from having a follow up conversation with Audrey Barrow and Hillary Yetter. I wanted to let you know as soon as possible. I appreciate your understanding in this matter.

Thank you,

**Tavner Snelson** | Paycom Specialist
7501 W. Memorial Rd | Oklahoma City, OK 73142
Office: (800) 580-4505 | Fax: (800) 580-5596





## Amy Cook
Tue 9/26/2017 8:32 AM

To: Tavner Snelson;

If you change your mind please let me know and I am happy to coordinate along with our Human Resources department.

Thank you again for your time last week and for the specific tax examples you brought. I have a meeting today to give additional feedback to them regarding communication we received and how it can be more streamlined.

If you have additional specific examples of items you see there could be a different solution that would increase productivity and job satisfaction please use the feedback avenues we have provided. These include Feedback Fred, OFI, Team Leader, Supervisor, myself or Kyle Bruce. As we discussed you have some relevant feedback. Please remember that the expectation for you and all employees here at Paycom is to contribute in a positive manner and creating a positive culture and work environment by sharing with proper individuals and refraining from negatively speaking to peers. Please ask questions to your Team Leader, Supervisor, Kyle or myself if you feel you don't understand or if the why



Bruce. As we discussed you have some relevant feedback. Please remember that the expectation for you and all employees here at Paycom is to contribute in a positive manner and creating a positive culture and work environment by sharing with proper individuals and refraining from negatively speaking to peers. Please ask questions to your Team Leader, Supervisor, Kyle or myself if you feel you don't understand or if the why behind a task hasn't been explained.

Thank you again for sharing the specific examples and I am always available if you have questions.

Thank you,

**Amy Cook Fisher | Manager of Paycom Service**
7501 W. Memorial Rd | Oklahoma City, OK 73142
Office: (405) 722-6900 | Fax: (405) 722-2018



DISCLAIMER: This email, and any attachments, is intended only for the use of the individual or entity to which it is addressed, and may contain information that is confidential or privileged and exempt from disclosure under applicable law. If the reader of this email is not the intended recipient, or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this





## Tavner Snelson
Tue 9/5/2017 2:07 PM

To: Chad Richison;

Good afternoon,

I feel like my employment at Paycom as a specialist is not a mutually beneficial professional relationship. My job as a specialist and my current responsibilities are making both my physical and mental health suffer, this is clearly impacting my time in the office. I am unable to perform at my best and I know this is not what Paycom wants from me.

As a specialist, I feel undervalued, unheard, consistently blamed, and setup for failure. When I have asked for room for growth, I appreciate the new responsibilities; however, they have been added onto my current workload in a way that is not manageable for me.

I understand Paycom has invested so much time and training into my employment and I know that I am





good at my job and am highly capable with my knowledge. I am confident that I am and will continue to be a valuable member of the Paycom team if I am able to find another opportunity within the company in which my skillset can be utilized. If I cannot have the opportunity to explore other jobs within different departments, I feel as though my only option is to leave Paycom.

I hope to be able to collaborate with management to figure out a way to make my employment at Paycom beneficial for the company and a positive experience for myself. I appreciate the consideration in this matter.

After presenting this letter to my team leader on 8/21/17 I was given the opportunity to speak with my supervisor, team leader, and a member of the human resource team. I was told moving to a different department was not an option. I was then presented with an ADA Accommodation Request paperwork and FMLA paperwork. I was approached by Amy Cook later that week when she saw me crying. She had a lengthy conversation with me about how I was feeling and was able to provide me with some insight on the department vision. I left that meeting with hope that my concerns would be addressed and potentially would get better. She was going to follow up with me



6:08 PM

8/21/17 I was given the opportunity to speak with my supervisor, team leader, and a member of the human resource team. I was told moving to a different department was not an option. I was then presented with an ADA Accommodation Request paperwork and FMLA paperwork. I was approached by Amy Cook later that week when she saw me crying. She had a lengthy conversation with me about how I was feeling and was able to provide me with some insight on the department vision. I left that meeting with hope that my concerns would be addressed and potentially would get better. She was going to follow up with me and unfortunately has not done so. I was able to turn in the necessary paperwork to HR last week and was approved for FMLA.

Last Friday you asked us if we had any questions for you and I do. Is there a way to collaborate with management or is this truly my only option?

Thank you,

**Tavner Snelson** | Paycom Specialist
7501 W. Memorial Rd. | Oklahoma City, OK 73142
Office: (800) 580-4505 | Fax: (800) 580-5596

Ever wish you could log into Paycom on your phone using your



Tavner Snelson
Tue 9/5/2017 5:58 PM

To: Chad Richison;
Cc: Chad Raymond

Hello Chad,

Thank you for your email and I appreciate your
attention in this matter. Chad Raymond reached out to
me shortly after your email and was able to meet with
me this afternoon.

Thank you,

**Tavner Snelson** | **Paycom Specialist**

7501 W. Memorial Rd | Oklahoma City, OK 73142
Office: (800) 580-4505 | Fax: (800) 580-5596

Ever wish you could log into Paycom on your phone using your
fingerprint? You **app-solutely can!** The Paycom app makes it even
easier to access Employee-Self Service on your mobile device, with
new features that include fingerprint login and notifications. **Download It**





## Chad Richison
Tue 9/5/2017 3:09 PM
Need to Keep

**To:** Tavner Snelson;
**Cc:** Chad Raymond <

● You replied on 9/5/2017 5:58 PM.

I am sorry to hear that the job is contributing added stress and I greatly appreciate your willingness to provide feedback to that end. I also appreciate the time you have put in to the job and Paycom.

I am working offsite today, so I am copying Chad Raymond in hopes that he is aware of your request and the response you have been given. He or someone else will reach out to you today to ensure that you are being treated fairly.

Irregardless your final decisions, I wish you the best.


Chad Richison





EEOC Form 5 (11/09)

| **CHARGE OF DISCRIMINATION**<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br><br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s):<br><br>564-2018-01143 |
|---|---|---|

| Oklahoma Attorney General's Office, Office of CR Enforcement | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name (indicate Mr., Ms., Mrs.)<br>**Ms. Tavner Snelson** | Home Phone (incl. Area Code) | Date of Birth |
|---|---|---|
| Street Address                        City, State and ZIP Code | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name<br>**PAYCOM PAYROLL LLC** | No. Employees, Members<br>**500 or More** | Phone No. (Include Area Code)<br>**(800) 580-4505** |
|---|---|---|
| Street Address                        City, State and ZIP Code<br>**7501 W. Memorial Road, Oklahoma City, OK 73142** | | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: **8-2016**   Latest: **10-2017**

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I. I was hired November 2015 as a Paycom Specialist. I spoke out about the hostile environment that I work in and how it impacted my disability. I asked for accommodations on or about August 21, 2017. I asked Audrey Barrow, my Team Leader; Hillary Yetter, my Supervisor, and Chad Raymond with Human Resources.

I requested to move or have other accommodations on multiple other occasions in writing. Instead of allowing me accommodations or working to improve the work environment I was labeled a trouble maker and a negative employee. I was placed in situations that made my disability worse in an effort to force me to quit. I specifically requested a transfer to a HCM Product Setup Specialist position that would alleviate the stressors associated with my position and would put me in a situation that allowed me to do my work in a satisfactory method without it triggering my mental health conditions. This would have allowed me to work under supervisors who were not discriminatory. I also needed a time out or a break from time to time. We were often made to work though lunch and not allowed or encouraged to take time off.

Each request for accommodation was denied. I was told to be less negative and to learn to control my emotions. On October 12, 2017 I summitted my two weeks notice, but I was escorted from the premises that day.

II. I believe that I have been discriminated against because of my, gender, Female, and in retaliation for my complaints in violation of Title VII of the Civil Rights Act of 1964, as amended; and my disability, in violation of the Americans with Disabilities Act of 1990, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>4/20/18     Tavner Snelson /RB-<br>Date          Charging Party Signature | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so <u>within 15 days</u> of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is** taken against you or others who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

To: **Tavner Snelson**

From: **Oklahoma City Area Office**
215 Dean A. McGee Avenue
Suite 524
Oklahoma City, OK 73102

☐ On behalf of person(s) aggrieved whose identity is
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 564-2018-01143 | K. Kelly, Investigator | (405) 231-4353 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐  Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*K. Kelly for*

**Holly Waldron Cole,**
Area Office Director

November 14, 2018
*(Date Mailed)*

Enclosures(s)

cc:  **Rachel Bussett**
Bussett Legal Group, P.L.L.C
432 N.W. 11th St
Oklahoma City, OK 73103

Denelda L. Richardson
Rhodes, Hieronymus, Jones, Tucker & Gable, P.L.L.C.
P.O. Box 21100
Tulsa, Oklahoma 74121

Tiffany Gamblin, HR Manager
Paycom
7501 W. Memorial Road
Oklahoma City, OK 73142

Enclosure with EEOC
Form 161 (11/16)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** — **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge within 90 days of the date you receive this Notice. Therefore, you should keep a record of this date. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed within 90 days of the date this Notice was mailed to you (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** — **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred more than 2 years (3 years) before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – not 12/1/10 – in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** — **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** — **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, please make your review request within 6 months of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

●●○○○ Sprint LTE     6:06 PM     ⚡ ⚹ 76% 🔋

🔒 webmail.paycomonline.com   ↻

## Tavner Snelson
Tue 9/5/2017 2:07 PM

EXHIBIT 2

**To:** Chad Richison;

Good afternoon,

I feel like my employment at Paycom as a specialist is not a mutually beneficial professional relationship. My job as a specialist and my current responsibilities are making both my physical and mental health suffer, this is clearly impacting my time in the office. I am unable to perform at my best and I know this is not what Paycom wants from me.

As a specialist, I feel undervalued, unheard, consistently blamed, and setup for failure. When I have asked for room for growth, I appreciate the new responsibilities; however, they have been added onto my current workload in a way that is not manageable for me.

I understand Paycom has invested so much time and training into my employment and I know that I am



good at my job and am highly capable with my knowledge. I am confident that I am and will continue to be a valuable member of the Paycom team if I am able to find another opportunity within the company in which my skillset can be utilized. If I cannot have the opportunity to explore other jobs within different departments, I feel as though my only option is to leave Paycom.

I hope to be able to collaborate with management to figure out a way to make my employment at Paycom beneficial for the company and a positive experience for myself. I appreciate the consideration in this matter.

After presenting this letter to my team leader on 8/21/17 I was given the opportunity to speak with my supervisor, team leader, and a member of the human resource team. I was told moving to a different department was not an option. I was then presented with an ADA Accommodation Request paperwork and FMLA paperwork. I was approached by Amy Cook later that week when she saw me crying. She had a lengthy conversation with me about how I was feeling and was able to provide me with some insight on the department vision. I left that meeting with hope that my concerns would be addressed and potentially would get better. She was going to follow up with me



••ooo Sprint LTE                6:06 PM              76%

🔒 webmail.paycomonline.com

8/21/17 I was given the opportunity to speak with my supervisor, team leader, and a member of the human resource team. I was told moving to a different department was not an option. I was then presented with an ADA Accommodation Request paperwork and FMLA paperwork. I was approached by Amy Cook later that week when she saw me crying. She had a lengthy conversation with me about how I was feeling and was able to provide me with some insight on the department vision. I left that meeting with hope that my concerns would be addressed and potentially would get better. She was going to follow up with me and unfortunately has not done so. I was able to turn in the necessary paperwork to HR last week and was approved for FMLA.

Last Friday you asked us if we had any questions for you and I do. Is there a way to collaborate with management or is this truly my only option?

Thank you,

**Tavner Snelson** | **Paycom Specialist**
7501 W. Memorial Rd | Oklahoma City, OK 73142
**Office:** (800) 580-4505 | **Fax:** (800) 580-5596

Ever wish you could log into Paycom on your phone using your





**Tavner Snelson**
Tue 9/5/2017 5:58 PM

**To:** Chad Richison;
**Cc:** Chad Raymond <

Hello Chad,

Thank you for your email and I appreciate your
attention in this matter. Chad Raymond reached out to
me shortly after your email and was able to meet with
me this afternoon.

Thank you,

**Tavner Snelson** | Paycom Specialist

7501 W. Memorial Rd | Oklahoma City, OK  73142
**Office:** (800) 580-4505 | **Fax:** (800) 580-5596

Ever wish you could log into Paycom on your phone using your
fingerprint? **You *app*-solutely can!** The Paycom app makes it even
easier to access Employee-Self Service on your mobile device, with
new features that include fingerprint login and notifications. **Download it**
for free in the Apple App Store or Google Play Store



# Notice of Eligibility and Rights & Responsibilities
## (Family and Medical Leave Act)

**U.S. Department of Labor**
Wage and Hour Division



OMB Control Number: 1215-0203
Expires: 5/31/2015

In general, to be eligible an employee must have worked for an employer for at least 12 months, meet the hours of service requirement in the 12 months preceding the leave, and work at a site with at least 50 employees within 75 miles. While use of this form by employers is optional, a fully completed Form WH-381 provides employees with the information required by 29 C.F.R. § 825.300(b), which must be provided within five business days of the employee notifying the employer of the need for FMLA leave. Part B provides employees with information regarding their rights and responsibilities for taking FMLA leave, as required by 29 C.F.R. § 825.300(b), (c).

## [Part A – NOTICE OF ELIGIBILITY]

TO:    **Tavner Snelson**
     Employee

FROM:   **Taylor McMullen**
      Employer Representative

DATE:   **8/23/2017**

On **8/23/2017**        , you informed us that you needed leave beginning on **8/14/2017**      for:

____ The birth of a child, or placement of a child with you for adoption or foster care;

✓ Your own serious health condition;

____ Because you are needed to care for your ____ spouse; ____ child; _____ parent due to his/her serious health condition.

____ Because of a qualifying exigency arising out of the fact that your ____ spouse; ____ son or daughter; _____ parent is on covered active duty or call to covered active duty status with the Armed Forces.

____ Because you are the ____ spouse; ____ son or daughter; _____ parent; _____ next of kin of a covered servicemember with a serious injury or illness.

This Notice is to inform you that you:

✓ Are eligible for FMLA leave (See Part B below for Rights and Responsibilities)

____ Are not eligible for FMLA leave, because (only one reason need be checked, although you may not be eligible for other reasons):

     ____ You have not met the FMLA's 12-month length of service requirement. As of the first date of requested leave, you will have worked approximately ____ months towards this requirement.
     ____ You have not met the FMLA's hours of service requirement.
     ____ You do not work and/or report to a site with 50 or more employees within 75-miles.

If you have any questions, contact **Taylor McMullen - taylor.mcmullen@paycomonline.com**    or view the FMLA poster located in **the breakrooms** .

## [PART B-RIGHTS AND RESPONSIBILITIES FOR TAKING FMLA LEAVE]

As explained in Part A, you meet the eligibility requirements for taking FMLA leave and still have FMLA leave available in the applicable 12-month period. However, in order for us to determine whether your absence qualifies as FMLA leave, you must return the following information to us by **9/7/2017** . (If a certification is requested, employers must allow at least 15 calendar days from receipt of this notice; additional time may be required in some circumstances.) If sufficient information is not provided in a timely manner, your leave may be denied.

✓ Sufficient certification to support your request for FMLA leave. A certification form that sets forth the information necessary to support your request ✓ is/ ____ is not enclosed.

____ Sufficient documentation to establish the required relationship between you and your family member.

____ Other information needed (such as documentation for military family leave): _____

_____

____ No additional information requested

Page 1                CONTINUED ON NEXT PAGE                Form WH-381 Revised February 2013

EXHIBIT 3

# paycom

## MEDICAL QUESTIONNAIRE IN SUPPORT OF ACCOMMODATION REQUEST

The purpose of this form is to make a determination about whether an employee has a disability that qualifies for an accommodation consistent with the Americans with Disabilities Act (ADA) and must be completed by the treating medical provider. The ADA provides for reasonable accommodations for qualifying employees to perform the essential functions of their jobs and also provides reasonable accommodations for other benefits and privileges of employment (e.g. training development, recognition activities). Not all requests for accommodations require a completed medical questionnaire (e.g. when both the disability and need for accommodation are obvious or when the employee has already provided sufficient information to document the existence of the disability and functional limitations relating to the essential functions of the job).

Employee Name: **TAVNER SNELSON**

1. Have you examined the above mentioned employee?  Yes ✓  No ☐
   a. If yes, date of last examination: **8-29-2017**

2. Does the employee have a "physical or mental" impairment interfering with the employee's ability to perform the essential functions of the job or access a benefit or privilege of employment?  Yes ✓  No ☐
   (The ADA defines "physical or mental impairment" as any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin and endocrine and any mental or psychological disorder, such as intellectual disability (formerly termed mental retardation), organic brain syndrome, emotional or mental illness and specific learning disabilities. This list of examples is not exhaustive).

3. Does the physical or mental impairment impact any "major life activity" of the employee?
   The ADA defines "major life activities" as the basic activities that the average person in the general population can perform with little or no difficulty, such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, sitting, standing, lifting and reaching. Major life activities also include the operation of major bodily functions including but not limited to immune, normal cell growth, digestive, bowel, bladder, genitourinary, hemic, special sense organs and skin, lymphatic, neurological, brain, respirator, circulator, endocrine, reproductive, musculoskeletal, special sense organs, cardiovascular. This list of examples is not exhaustive).  Yes ☐  No ✓
   a. If you answered yes to #3, please identify the specific major life activity/activities impacted:

Successfully completed Senior Payroll Specialist Year 2 Checklist.

## Checklist Items:

- Complete a minimum of 5 hours of department skills training
- Complete a minimum of 10 hours of customer service training
- Complete a minimum of 10 hours of personal/professional training
- Complete a minimum of 10 hours of product training
- Attend at least 3 leadership training courses
- Lead Team in 1 Leadership Training
- Manage 5 Team Projects
- Average 91% Customer Retention over last 4 Quarters
- Role Play with Team Leader – HEART Model
- Overall score of 3.25+ on TL Review
- Complete Self Analysis
- Must be a Senior Payroll Specialist Year 1 for a minimum of 1 year
- Maintain 135 customers or 9000 employees
- Complete 8 hours Tax observation

## PHYSICAL DEMANDS

The physical demands described here are representative of those that must be met by an employee to successfully perform the essential functions of this job. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

While performing the duties of this job, the employee is regularly required to stand; walk; sit; use hands to finger, handle, or feel; reach with hands and arms; and talk or hear. The employee may occasionally lift and/or move up to 25 pounds. Specific vision abilities required by this job include close vision, color vision, and ability to adjust focus.

## WORK ENVIRONMENT CONDITIONS

The work environment characteristics described here are representative of those an employee encounters while performing the essential functions of this job.

No hazardous or significantly unpleasant conditions. (Such as in a typical office).

The noise level in the work environment is usually moderate.

---

## INTENT AND FUNCTION OF JOB DESCRIPTIONS

*Job descriptions assist organizations in ensuring that the hiring process is fairly administered and that qualified employees are selected. They are also essential to an effective appraisal system and related promotion, transfer, layoff, and termination decisions. Well constructed job descriptions are an integral part of any effective compensation system.*

*All descriptions have been reviewed to ensure that only essential functions and basic duties have been included. Peripheral tasks, only incidentally related to each position, have been excluded. Requirements, skills, and abilities included have been determined to be the minimal standards required to successfully perform the positions. In no instance, however, should the duties, responsibilities, and requirements delineated be interpreted as all inclusive. Additional functions and requirements may be assigned by supervisors as deemed appropriate.*

*In accordance with the American with Disabilities Act, it is possible that requirements may be modified to reasonably accommodate disabled individuals. However, no accommodations will be made which may pose serious health or safety risks to the employee or others or which impose undue hardships on the organization.*

*Job descriptions are not intended as and do not create employment contracts. The organization maintains its status as an at-will employer. Employees can be terminated for any reason not prohibited by law.*

---

Employee Name- Please Print                    Date

## POSITION DESCRIPTION

**Job Title: Senior Paycom Specialist Year 2**
**Department: Operations**
**Reports To: Team Leader**
**Completed By: Amy Cook**
**Classification: Non-Exempt**
**Job Code:**
**Date: 5/29/15**



### POSITION PURPOSE

Responsible for servicing customers timely through phone calls and emails while focusing on retaining 100% of their customers.

### RESPONSIBILITIES

- Assumes responsibility for ensuring assigned customers payrolls are processed accurately and timely:
    - Identifies who is scheduled to process payroll each day.
    - Monitors those customers to ensure the payroll is either processed on the day it is scheduled or according to customer's instructions scheduled to process on another day.
    - Monitors e-mail notifications, Online Admin and incoming faxes/phone calls timely so payrolls that were submitted by the customer deadline are processed that same day.
    - Deletes the customer's prior payroll(s) and imports the correct submitted payroll(s).
    - Processes the payroll in Indy and BOSS according to the customer's and Paycom management's instructions.
    - Reviews payroll notes to ensure all necessary tasks are completed for each payroll.
    - Creates accurate cash requirement in BOSS.
    - Ensures customer's delivery instructions are noted correctly in Indy and monitors any changes in delivery method to ensure timely delivery.
    - Accurately and timely processes manual checks and voids.
- Assumes responsibility for answering incoming calls and/or e-mails from customers on a timely basis.
    - Ensures customers have constant access to their assigned Specialist during Paycom's office hours.
    - Answers phone on first or second ring.
    - Answers customer's e-mail request within 10 minutes of receiving them.
    - Demonstrates sufficient knowledge of all Paycom services including payroll and time and attendance and assists customers effectively.
    - Displays proper Telephone Etiquette by using the HEART model and always using a proper opening and closing.
    - Handles difficult customers effectively and with courtesy.
- Assumes responsibility for effectively researching, tracking and resolving (or properly referring) customer's payroll issues on a timely basis.
- Assumes responsibility for establishing and maintaining effective communication and coordination with Paycom personnel and management.
    - Assists other Payroll Specialist as needed.
    - Keeps management informed of area activities and of any significant customer problems.
    - Demonstrates initiative by constantly looking for and recommending ways to improve Paycom operations and/or customer service.
    - Attends and participates in meetings as required.
    - Maintains a positive attitude with all Paycom personnel and management.
    - Adheres to all policies of Paycom including those outlined in the Paycom Employee Handbook.
    - Effectively adheres to all Paycom processing guidelines such as required forms and emails.
- Assumes responsibility for assisting Paycom management with special projects including quarter-end and year-end processing.
    - Willingly works additional hours required to complete projects on time.
    - Completes projects accurately.
    - Completes projects timely as defined by Paycom management.
    - Assist coworkers and Paycom management when requested.
- Regular attendance as required.
- Performs other duties as assigned

### QUALIFICATIONS
**Experience Required:**



MEDICAL QUESTIONNAIRE IN SUPPORT OF ACCOMMODATION REQUEST

4. With respect to the major life activity identified in your response to #3, is the employee
substantially limited in such activity?                    Yes [ ]  No [✓]  N/A

['Substantially limited' means the employee is unable to perform the activity, or substantially limited in the
manner or duration under which he/she can perform the activity, as compared to the ability of the average
person in the general population).                                              ⚡ PT- Patient

  o   Compare the employee to most people in the general population.
  o   The impairment need not prevent or severely restrict.
  o   Consider the limitation as if the condition is in active state. Mitigating measures should not be considered.
      (e.g. medication, medical equipment and devices, prosthetic limbs, low vision devices, hearing aids, mobility
      devices)

5. Is the substantial limitation temporary or permanent?
   (Note, does not need to significantly or severely restrict to meet this standard).

6. If temporary, what is the anticipated duration of the impairment?

7. Can the employee perform the essential functions of the position WITH a reasonable
   accommodation? (See attached job description).              Yes [✓]  No [ ]

   a.   If you answered yes to #7:
        i.    Which job functions require an accommodation?

        ii.   What accommodations are recommended? (Multiple recommendations are suggested).

        iii.  How will the accommodation(s) enable the employee to perform the
              essential functions of the position or access a benefit or privilege of
              employment?

                                                        8/29/2017
Signature of Medical Provider                           Date

Provider's Name:
Address:
Phone Number:

_____                                 8/29/17
Employee Signature                                       Date

1. ██████████████ Approximate date condition commenced:

Probable duration of condition: ████████████████

Mark below as applicable:
Was the patient admitted for an overnight stay in a hospital, hospice, or residential medical care facility?
___No ___Yes. If so, dates of admission:

████████████████████████████████████

___ Date(s) you treated the patient for condition:

Will the patient need to have treatment visits at least twice per year due to the condition? ___No __✓_Yes.

Was medication, other than over-the-counter medication, prescribed? ___No __✓_Yes.

Was the patient referred to other health care provider(s) for evaluation or treatment (e.g., physical therapist)?
___No __✓_Yes. If so, state the nature of such treatments and expected duration of treatment:

████████████████████████████████████

2. Is the medical condition pregnancy? __✓_No ___Yes. If so, expected delivery date: _____

3. Use the information provided by the employer in Section I to answer this question. If the employer fails to provide a list of the employee's essential functions or a job description, answer these questions based upon the employee's own description of his/her job functions.

Is the employee unable to perform any of his/her job functions due to the condition: ___No __✓_Yes. as mentioned above

If so, identify the job functions the employee is unable to perform:

████████████████████████████████████

4. Describe other relevant medical facts, if any, related to the condition for which the employee seeks leave (such medical facts may include symptoms, diagnosis, or any regimen of continuing treatment such as the use of specialized equipment):

N/A — CONTACT ME DIRECTLY PRN. ██████

_____

_____

_____

_____

_____

**PART B: AMOUNT OF LEAVE NEEDED**

5. Will the employee be incapacitated for a single continuous period of time due to his/her medical condition, including any time for treatment and recovery? ___No ___Yes. ~~Possibly yes~~

   If so, estimate the beginning and ending dates for the period of incapacity:

6. Will the employee need to attend follow-up treatment appointments or work part-time or on a reduced schedule because of the employee's medical condition? ✓No ___Yes.

   If so, are the treatments or the reduced number of hours of work medically necessary?
   ___No ___Yes. See Above

   Estimate treatment schedule, if any, including the dates of any scheduled appointments and the time required for each appointment, including any recovery period:

   Estimate the part-time or reduced work schedule the employee needs, if any: N/A

   _____ hour(s) per day; _____ days per week from _____ through _____

7. Will the condition cause episodic flare-ups periodically preventing the employee from performing his/her job functions? ___No ✓Yes.

   Is it medically necessary for the employee to be absent from work during the flare-ups?
   _____ No ✓Yes. If so, explain:

   Based upon the patient's medical history and your knowledge of the medical condition, estimate the frequency of flare-ups and the duration of related incapacity that the patient may have over the next 6 months (e.g., 1 episode every 3 months lasting 1-2 days):

   Possible Frequency 0 - 1 : _____ times per 1 week(s) _____

   Duration: 1 hours or 1 day(s) per episode

**ADDITIONAL INFORMATION: IDENTIFY QUESTION NUMBER WITH YOUR RESPONSE**

N/A - Please Contact Me Personally if more Data is Needed.

Page 3                    CONTINUED ON NEXT PAGE            Form WH-380-E Revised May 2015

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____        B/28/2017

Signature of Health Care Provider                         **Date**

**PAPERWORK REDUCTION ACT NOTICE AND PUBLIC BURDEN STATEMENT**
If submitted, it is mandatory for employers to retain a copy of this disclosure in their records for three years. 29 U.S.C. § 2616; 29
C.F.R. § 825.500. Persons are not required to respond to this collection of information unless it displays a currently valid OMB
control number. The Department of Labor estimates that it will take an average of 20 minutes for respondents to complete this
collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining
the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden
estimate or any other aspect of this collection information, including suggestions for reducing this burden, send them to the
Administrator, Wage and Hour Division, U.S. Department of Labor, Room S-3502, 200 Constitution Ave., NW, Washington, DC
20210. **DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR; RETURN TO THE PATIENT.**

October 12, 2017
Paycom
7501 W Memorial Road
Oklahoma City, OK, 73142

To Whom It May Concern:

It is with reluctance that I submit this letter. Although my time with Paycom has been, on the whole, satisfying and productive, for quite a while now I have become less and less satisfied with the work situation. The direction of the department in which I work, and the new targets and the methods of accomplishing them have made it increasingly difficult to feel I'm contributing enough. I am unable to continue my employment with Paycom after the denial of my transfer to a new position within PSD or a new department.

Therefore, it is with regret that I ask you to accept this letter of resignation from Paycom effective October 27, 2017.

Thank you,

Tavner Snelson

EXHIBIT 4